(Decided 20th June, 1893.)

FARMERS' MUTUAL FIRE INSURANCE COMPANY OF DUG HILL, CARROLL COUNTY *vs.* GEORGE W. HULL.

*Mutual Fire Insurance— Waiver of Forfeiture—Assessment after Knowledge of Forfeiture.*

An assessment levied by a mutual fire insurance company on the premium note of a policy holder, with knowledge of the forfeiture of the policy, and the collection of such assessment made to pay losses sustained by the company before the forfeiture, does not constitute a waiver thereof, although such assessment was in excess of what was actually necessary to pay such losses.

APPEAL from the Circuit Court for Carroll County.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, and McSHERRY, J.

*Charles T. Reifsnider,* and *James A. C. Bond,* (with whom was *J. Milton Reifsnider,* on the brief,) for the appellant,

Referred to the following authorities: *Maryland Fire Ins. Co. vs. Gusdorf,* 43 *Md.,* 506; *Insurance Company vs. Wilkinson,* 13 *Wallace,* 222; *Insurance Company vs. McGookey,* 33 *Ohio,* 555; *Findeisen vs. Metropole Fire*

Farmers' Mutual Fire Ins. Co. *vs.* Hull.

*Insurance Co.*, 57 *Verm.*, 520, and 10 *Am. and Eng. Corp. Cases,* 536; *Hoxie vs. Home Ins. Co.*, 32 *Conn.*, 40; *Merrill vs. Agricultural Ins. Co.*, 73 *N. Y.*, 452; *Mutual Life Ins. Co. vs. Amerman*, 119 *Ill.*, 329; *Hambleton vs. Home Ins. Co.*, 6 *Biss.*, 95; *Diehl vs. Adams Co. Mutual Ins. Co.*, 58 *Penn.*, 443; *Beatty vs. Lycoming Co. Mutual Ins. Co.*, 66 *Penn.*, 9; *Schimp vs. Cedar Rapids Ins. Co.*, 124 *Ill.*, 354; *Washington Fire Ins. Co. vs. Davison and Symington*, 30 *Md.*, 92; *Westchester Fire Ins. Co. vs. Weaver*, 70 *Md.*, 539.

*Wm. H. Thomas,* and *Harry M. Clabaugh,* (with whom was *John M. Roberts,* on the brief,) for the appellee.

When the appellant assessed the appellee upon his premium note for fires that occurred subsequent to his, the appellant held out to him that the company still regarded his policy as in force and operation; and he paid the full amount of his assessment upon this theory. There was still a large amount of property embraced within the terms of the policy, that was not destroyed, and the appellant evidently regarded itself as the insurer of this, otherwise on what pretence could it make the appellee pay any amount of money, no matter how small, except what was proportionately due by the appellee upon his premium note at the time of his fire, unless the company can say your policy is good to pay on, but not to receive on. The appellant, however, in its by-laws, prescribes that assessments shall be made on the premium note "so long as the insurance or insurances, for which they were given as premiums, shall exist by this company," therefore in making the assessment the appellant, according to this by-law, recognizes the existence of the policy as a subsisting contract. The policy of insurance in this case, therefore must be distinguished from that class of policies, which in terms say, that either the premium is considered *earned,* or the pre-

mium note is liable to assessment until its maturity, even though the policy of insurance may in the mean-time, in either case, become forfeited. If therefore any part of the policy was in force the whole of it was. *Bowman vs. Franklin Fire Ins. Co.*, 40 *Md.*, 632. The fact, therefore, that the appellant collected the assessment in question from the appellee, led the appellee to believe that his policy of insurance was in force, and the assessment was paid by the appellee, induced by the reasonable belief that the appellant still recognized the policy, and is therefore within the policy of the doctrine of estoppel as indicated in *Rokes vs. Amazon Ins. Co.*, 51 *Md.*, 521.

The acceptance of the assessment then by the appellant, after the knowledge of the forfeiture of the policy, waives the forfeiture or the breach. *Murray vs. Home Benefit Life Ass'n*, 25 *Am. St. Rep.*, 133, 135, *and notes,* (90 *Cal.*, 402;) *Insurance Co. vs. Norton*, 96 *U. S.*, 234; *Grubbs vs. N. C. Home Ins. Co.*, 23 *Am. St. Rep.*, 66, *and notes,* (108 *N. C.*, 472;) *Harl vs. Pottawattamie County Mutual Fire Ins. Co.*, 22 *Am. and Eng. Corp. Cases*, 627, (74 *Iowa*, 39;) *Findeisen vs. Metropole Fire Ins. Co.*, 10 *Am. and Eng. Corp. Cases*, 534, (*notes on pages* 558, 559 *and* 561.)

The acceptance of a premium *after a loss has occurred* is a waiver of the right of forfeiture. *Phœnix Fire Ins. Co. vs. Tomlinson*, 21 *Am. State Reports*, 203, (125 *Indiana*, 84;) *Powell vs. Factors' and Traders' Ins. Co.*, 28 *La. Ann. Rep.*, 19. And the doctrine is supported by the cases of *Elliott vs. Lycoming County Mutual Ins. Co.*, 66 *Penn.*, 22, (5 *Am. R.*, 323;) *Reynolds vs. Mutual Fire Ins. Co.*, 34 *Md.*, 280; *Maryland Fire Ins. Co. vs. Gusdorf*, 43 *Md.*, 514, &c.

ROBINSON, C. J., delivered the opinion of the Court.

The simple question in this case, is whether the plaintiff is entitled to recover on a fire policy issued by the

defendant, the damage sustained by him in the loss of his barn and its contents by fire. The defendant denies its liability because of the breach or forfeiture of the policy by the plaintiff.

About a year before the fire, the plaintiff bought a *portable steam engine, and stationed it within thirty* feet of the rear or west end of the barn. The engine was connected by means of a strap and pulley to a chopper inside of the barn, and was used for the purpose of chopping and threshing grain. The fire was discovered about four o'clock in the afternoon, in some fodder *stacked against the side* of the barn. The plaintiff had used the engine till about one o'clock of the day of the fire, in chopping grain for his cattle, and the fire in the grate of the engine was still burning when the neighbors got to the premises. It was conceded in the argument, or, if not conceded, the use of the engine, under the circumstances, without the permission of the defendant, was beyond all question a forfeiture of the policy. But the plaintiff's contention is, that the forfeiture was *waived* by the defendant. It was waived he says, because the defendant subsequently, and with full knowledge of the forfeiture, levied an assessment on his premium note, and this assessment was paid by him. It has been held in some cases, and properly held, that an assessment made on a premium note with knowledge of the forfeiture of the policy and the payment of the assessment by the insured will be considered as an implied waiver of the forfeiture. It will be so considered because an assessment thus made is altogether inconsistent with an intention on the part of the insurer to treat the policy as being forfeited, and relying upon this implied intention, the insured was induced to pay the assessment, and which otherwise he would not have paid. The insurer cannot treat the policy as a valid

and binding contract for one purpose, and invalid for other purposes.

The whole theory of implied waiver, so far as it applies to cases of this kind, is based upon some act or contract on the part of the insurer inconsistent with an intention to insist upon or claim whatever rights he may have acquired by reason of the forfeiture, and the insured, relying upon this implied intention, has been induced to do some act to his prejudice or injury.

But it does not seem to us, that the assessment made by the defendant, considering all the circumstances under which it was made, was in any manner inconsistent with an intention on its part to rely upon the breach or forfeiture of the policy; nor does it seem to us, that the defendant was in any manner induced to pay the assessment upon the faith that the defendant did not mean to rely upon such forfeiture. We are dealing with a policy issued by a mutual insurance company, the business of which was, by its charter, confined to the limits of Carroll County. Instead of the annual payment of premiums, the defendant relied solely upon assessments to be made upon the premium notes of its policy holders, for the means with which to pay its losses, and such assessments were made from time to time as the necessities of the company might require. Now, before the fire in question, and before the forfeiture of the plaintiff's policy, the defendant had become liable to other policy holders for losses to the amount of four thousand dollars, and to pay these losses, it was necessary to make assessments on the premium notes of its members. Accordingly on the 19th March, 1892, an assessment of three per cent. was made on all premium notes held by the company; the amount realized therefrom being $8,880.09. and the amount paid by plaintiff on his premium note being $9.57. The liability of the plaintiff on his premium note for losses sustained by the defendant before the forfeiture,

Farmers' Mutual Fire Ins. Co. *vs.* Hull.

and its right to make an assessment thereon to pay such losses, was not and could not be questioned. So the mere fact that an assessment was made by the defendant on the premium note of the plaintiff, cannot in itself be considered as an act inconsistent with an intention on its part to rely upon the breach or forfeiture of the policy, even though the assessment was made subsequently to such forfeiture. But the argument is that the assessment made by the defendant was in excess of what was actually necessary to pay the losses for which it was liable at and before the forfeiture of plaintiff's policy, and that this excess was used by the defendant in the payment of subsequent losses and expenses. Now, the plaintiff was not liable on his premium note it is true, for losses which occurred subsequently to the forfeiture, but the mere fact that part of the assessment made by the defendant was applied to the payment of such losses cannot, in itself, be held to constitute a waiver by the defendant. All the proof shows that from the time the committee, appointed to investigate as to the cause of the fire, made their report, the defendant denied all liability under the policy, and so informed the plaintiff, and denied its liability too on the ground that the fire had been caused by the use of the fire engine by the plaintiff in violation of the express terms of the policy. And, having the right to assess the premium note of the plaintiff to cover losses prior to the forfeiture, the fact that the assessment on the premium notes realized a sum more than was sufficient to pay such losses, cannot fairly be considered as evidence of an intention on the part of the defendant to waive the forfeiture; nor do we think it can be inferred that the plaintiff was in any manner misled by such assessment.

There being no evidence, therefore, from which a jury could reasonably find a waiver of the forfeiture by the defendant, nor any evidence from which they could find

that the plaintiff was misled by the acts or conduct of the defendant, we shall reverse the judgment without awarding a new trial.

*Judgment reversed,*
*without awarding a new trial.*

(Decided 20th June, 1893.)