RALPH H. ELLIOTT, Appellant, v. FARMERS MUTUAL FIRE INSURANCE ASSOCIATION OF BLACK HAWK COUNTY, Appellee.

No. 46245.

JULY 27, 1943.

L. J. Robertson, of La Porte City, for appellant.

W. T. Evans, of Waterloo, for appellee.

MANTZ, J.— On February 8, 1936, the Farmers Mutual Fire Insurance Association of Black Hawk County, Iowa, issued to plaintiff a fire policy in the amount of $2,000, covering a dwelling located upon real estate owned by plaintiff in Benton County, Iowa. The dwelling was totally destroyed by fire on January 15, 1938. Plaintiff claimed damages in the sum of $2,000, and interest, on account of such fire. He alleged that at the time of the fire the policy was in force, and further that he had complied with all of the terms and provisions thereof. He attached to his petition a copy of the policy sued upon and demanded judgment for $2,000, interest, and costs.

The defendant by answer denied both generally and specifically the allegations of the petition, except it admitted the issuance of the policy and that the copy attached was a true and correct copy thereof; admitted that on or about January 15, 1938, the dwelling house insured was destroyed by fire.

Defendant alleges: That said policy was issued by a mutual insurance association organized in accordance with and under the provisions of chapter 406 of the Code of Iowa, and that it provides that all losses sustained by said insurance association shall be paid by assessments upon its members and each member shall be liable to the association for all assessments made upon him. Said policy provides in article 12 that the board of directors has authority to make bylaws, rules, and regulations for the management of the association.

That on September 4, 1937, the board of directors levied an assessment of two and one-half mills on all policies in force September 1, 1937, to restore the surplus used in paying losses and conducting the business of the association; that the assessment on plaintiff's policy was $8.50, which was due and owing within thirty days after the notice of said assessment; that sec-

tion 15 of the bylaws provides that notice of assessment shall be given by mailing same on or before the date thereof, to the last-known address of the policyholder, and any member failing to pay his assessment within thirty days after notice shall not be entitled to receive any benefits or payment of any loss sustained during such delinquency.

That on September 28, 1937, defendant caused to be sent to plaintiff by mail a written and printed notice of said assessment of $8.50, advising him that the same was due on October 1, 1937, and would be delinquent on December 1, 1937. That plaintiff failed and neglected to pay the assessment; that on December 2, 1937, the defendant mailed to plaintiff a second notice of said assessment, showing that the assessment was delinquent December 1, 1937. Plaintiff having failed to pay the assessment, defendant, on January 1, 1938, mailed to him another notice that the assessment was delinquent December 1, 1937.

That said assessment of $8.50 became delinquent on December 1, 1937, and that the plaintiff received said notices; that he failed and neglected to pay the assessment of $8.50 due defendant from him, or any part thereof, and had not paid the same at the time of the alleged fire and loss under his policy of insurance, and, having failed to pay his assessment after due notice, he is not entitled to receive any benefits or payment for any loss sustained during said delinquency; and defendant prays that the plaintiff's petition be dismissed, and for costs.

All of the evidence was by stipulation of the parties filed in court on February 10, 1942. There was no dispute in the facts. After a consideration of the evidence, the court, on May 1, 1942, entered judgment dismissing the petition of the plaintiff and taxing the costs against him. The plaintiff appealed.

Before taking up the claim of appellant that the court erred in dismissing his petition, a summary of the facts as shown by the stipulation will be set forth. Briefly stated these facts are as follows:

Appellee is a mutual insurance association organized under chapter 406 of the Code of Iowa to insure property of its members against fire and lightning in accordance with the provi-

sions of said chapter, and its principal place of business is Waterloo, Black Hawk County, Iowa. On January 15, 1938, appellant was the owner of a dwelling house situated in Benton County, Iowa, which on said date was totally destroyed by fire and was then worth at least $2,000.

On February 8, 1936, appellee issued to appellant insurance policy No. 22459, the same being Exhibit A attached to appellant's petition. The articles of incorporation and bylaws of appellee are printed on the policy and are a part thereof, and are binding upon both parties. On September 4, 1937, the board of directors levied an assessment on all policies in force September 1, 1937, to restore surplus used in paying losses and to conduct the business. The assessment on appellant's policy was $8.50, which was due and owing by appellant to appellee as soon as notified. On the 28th day of September 1937, appellee mailed to appellant a written and printed notice of said assessment advising him of the amount due October 1, 1937, and that it would become delinquent December 1, 1937. Appellant failed to pay said assessment on December 1, 1937, and on December 2, 1937, appellee mailed to him a second notice of said assessment showing that the assessment was delinquent December 1, 1937. Appellant having failed to pay said assessment, the appellee, on January 1, 1938, sent to him by mail a third notice that said assessment of $8.50 became delinquent on December 1, 1937.

All of said notices were received by appellant promptly. Appellant failed to pay his assessment within thirty days after receipt of the notice sent to him on September 28, 1937, and failed to pay same December 1, 1937, and had not paid it at the time the house was burned on January 15, 1938. All of said notices were sent by ordinary mail.

After said house was destroyed by fire appellant sent a check of $8.50 by mail to the appellee, which was received by the appellee January 17, 1938, and cashed.

Section 15 of the bylaws of the appellee on the policy is as follows:

"Notice of assessment shall be given by mailing same on or before the date thereof, to the last known address of the

policy holder. Policy holders changing their address should notify the Secretary of said change. Any member failing to pay his assessment within thirty days after the date of notice shall not be entitled to receive any benefits or payment of any loss sustained during such delinquency. All policies not cancelled at the time of making any assessments shall bear their portion of said assessment.''

Exhibit B of the stipulation is the notice of the assessment received by appellant on October 1, 1937. This exhibit shows that the assessment was made for the period ending September 1, 1937; that it was on policy No. 22459 and was for the amount of $8.50; that the policyholder was Ralph H. Elliott of La Porte City, Iowa; that the notice was mailed by the Farmers Mutual Fire Insurance Association of Black Hawk County, Iowa; that the assessments were due October 1, 1937, delinquent December 1, 1937, and referred to the bylaws on the back of said policy. This exhibit contained the following, printed thereon:

"If assessment is not paid by December 1, 1937, your insurance is not in force.

"Pay your assessments in November to keep your insurance in force.''

It will be seen by the stipulation that appellant admits a proper assessment on all policies in force September 1, 1937; that the amount of the assessment upon the policy held by him was $8.50; that his assessment was due and owing as soon as notified; that there were sent to him by ordinary United States mail three notices from the association advising him of his assessment and the amount thereof; that the same was due October 1, 1937, and would be delinquent December 1, 1937; the first notice was sent September 28, 1937; the second notice was sent December 2, 1937, and there were written thereon in ink the words ''second notice''; and the third notice was sent on January 1, 1938, and there were written thereon in ink the words ''third notice.'' Appellant admits that he received the notices promptly and that he failed to pay the assessment on December 1, 1937, and that he had not paid it at the time the house was destroyed.

The notices sent by appellee to appellant advising him of the assessment are similar in form and are partly in printing and partly in writing.

The real dispute in this case is whether, under the policy sued upon, the appellant was entitled to receive any benefits or payment of loss sustained by him by reason of the fire, from and after December 1, 1937. Appellant claims that the policy was in force on the date of the fire, notwithstanding his failure to pay the assessment which became delinquent on December 1, 1937, and that in order for appellee to avoid liability it was required to cancel the policy, as provided by Article V of the articles of incorporation, and, not having done so, the appellee is liable for the fire loss.

The appellee does not claim that the policy was canceled but claims that it was suspended during the period from December 1, 1937, until after the fire, and that during such delinquency the appellant was not entitled to receive any benefit for the payment of the loss.

In brief, appellant claims that as there was no cancellation there was a liability, while appellee claims that during such delinquency there was no liability.

Appellant, in asking for a reversal of the judgment of the lower court, makes but one proposition, and that is as follows:

"The first proposition relied upon for reversal is that the Court erred in finding that Section 15 of the By-laws of the insurance association which are a part of the insurance policy amounted to a self-executing suspension clause suspending the policy from force while the member is in default in the payment of his assessment."

Following the above-quoted proposition, and under the heading, "The Record," appellant sets out section 15 of the bylaws, a part of the stipulation and heretofore set out.

In his brief appellant cites but one case, Federal Land Bank v. Farmers Mutual Ins. Assn., 217 Iowa 1098, 1100, 253 N. W. 52, 54. As a matter of fact, both parties rely upon the holding in that case to support their contentions.

The facts in that case are quite similar to the case at bar. The Federal Land Bank brought suit against the Farmers Mutual Insurance Association to recover on a fire insurance policy issued to one Davis, upon a dwelling owned by Davis and upon which the Federal Land Bank had a mortgage. After the fire, Davis assigned his claim to the mortgagee. The fire destroyed the dwelling on September 16, 1932, and the next day notice of the loss was given the insurer. The association refused to pay the loss on the grounds that certain assessments had not been paid by Davis and that the policy was suspended during the time the delinquency existed. The only issue was whether the policy had been canceled or suspended at the time of the fire. The indemnity was "against loss or damage by Fire or Lightning, for five years, from noon of the 21st of July, 1931, to noon of the 21st of July, 1936 (or) until cancellation of the policy by the Assured or the Association, as provided by the Articles of Incorporation and By-laws." Section 9 of the bylaws read as follows:

"This Association shall not be liable for any loss or damage, unless otherwise provided by agreement in writing · endorsed upon or added to the policy. * * * (f)—if the insured shall fail to pay any written obligation given to the Association for the premium or any assessment when due; provided the Association shall have given the insured notice as required by law."

In that case it appeared that on July 1, 1932, the defendant served notice on Davis that an assessment of $11.20 would be due on his policy on August 1, 1932, and the notice stated that policies generally were not in force if in arrears. A second notice was mailed on August 11, 1932, reminding him (Davis) that the $11.20 assessment due on August 1, 1932, had not been paid. The second notice contained the following statement: "Please keep in mind that your policy is not in force while past due assessments are unpaid." Neither notice contained a declaration for cancellation or suspension.

The court held that under the terms of the policy the only way for the company to escape liability was to cancel

the policy, and, not having done so, the policy was in effect at the time of the fire. The case further holds that the fire insurance policy for the fixed term of five years was not automatically suspended for the nonpayment of the assessment, as the policy contained no provision for suspension but simply declared that there was no liability thereunder for any loss if Davis failed to pay the assessment levied when due "provided the Association shall have given the insured notice as required by law." The holding in the case was that the notice referred to in the policy was that of cancellation, and that not having been given, the company was liable.

We are unable to agree with appellant that the cited case is authority for the claim which he makes herein—that appellee was required to cancel in order to avoid liability.

We think that the cited case simply holds, and is authority for the proposition that, under the policy sued upon, the insurance association, in order to escape liability, was obliged to cancel.

In giving consideration to the claim of appellant that the only way appellee could escape liability under the policy was to cancel, we call attention to the holding of this court in the case of Early v. Bremer County Farmers Mut. F. Ins. Assn., 201 Iowa 263, 207 N. W. 117. In that case the policy had therein a clause similar to the one in the present case dealing with the right of cancellation, and stated that the policy could be canceled by the association giving five days' notice to the insured. It was held therein that section 9054 had no application to a policy provision which suspends the membership of the policyholder and denies him the right of recovery for loss while he is delinquent in the payment of his assessments. In that case the court held that it was not necessary to serve a notice of cancellation in order to deprive the delinquent insured of his benefits under the policy. It further holds that the terms "suspension" and "cancellation" are not synonymous terms in the laws relating to insurance. On page 265 of 201 Iowa, page 118 of 207 N. W., the court said:

"The nonpayment of assessments duly levied and noticed to the insured operated *automatically* to suspend the policy,

and during the period of suspension the association could not be made liable for an occurring loss."

In that case the record showed that nine separate and distinct notices of assessment had been mailed by the secretary of the association to the insured covering assessments for three years, to which no response of any kind was made.

The suspension of a policy is not synonymous with cancellation thereof, unless, by agreement or otherwise, the two terms are to be considered as one. Early v. Bremer County Farmers Mut. F. Ins. Assn., supra; Federal Land Bank v. Farmers Mutual Ins. Assn., supra; Hart v. Farmers Mut. F. & L. Ins. Assn., 208 Iowa 1020, 1028, 226 N. W. 777, 780. In the Hart case the contract contained the following provision: "Any member failing to pay his or her assessment within thirty days after notice thereof by the secretary his or her policy shall stand suspended until all dues to the association are paid." In that case the court said:

"The case presented is not one of forfeiture or cancellation, but of suspension for nonpayment of assessments. The contract is: 'Any member failing to pay' his assessment shall stand suspended. After the expiration of the 30 days without payment, the certificate is ipso facto suspended."

In the Hart case the insured was delinquent on assessments for two years.

In the case of Beeman v. Farmers Pioneer Mut. Ins. Assn., 104 Iowa 83, 73 N. W. 597, 65 Am. St. Rep. 424, the policy provided that in case any member failed to pay his assessment within 30 days after notice of the assessment, his insurance would be null and void. The case further held that the only way to make an assessment delinquent was to give notice, so that the thirty days might run in which payment could be made, thus avoiding delinquency.

The stipulation provided that the policy, the articles of incorporation and bylaws printed thereon are and were binding upon both parties. The policy is a contract between insured and insurer and both have obligations pursuant to its terms. Our court has long followed the rule that the language of an

insurance policy is to be strictly construed against the insurer. This does not mean that the ordinary and natural meaning thereof is to be warped or perverted. Munger v. Brotherhood, 176 Iowa 291, 154 N. W. 879.

Section 15 of the bylaws has in it the provision, "Any member failing to pay his assessment within thirty days after the date of notice shall not be entitled to receive any benefits or payment of any loss sustained during such delinquency."

The notice given appellant on September 28, 1937, stated that the assessment was due October 1, 1937, delinquent December 1, 1937. Appellant argues that the notice to him gave him sixty days instead of thirty in which to pay his assessment and that this amounted to a failure on the part of the assurer to comply with the terms of the policy. Appellant did not make any plea of waiver. Inasmuch as appellee did not claim that the assessment was delinquent until December 1st, we fail to see wherein appellant can complain or wherein he has suffered any prejudice by having extended to him the additional time. October 1st was the due date but not the delinquent date. Had there been a loss under the policy between October 1st and December 1st, the insurer would have been liable. Under the notice the appellant was required to pay the assessment before it became delinquent, and not having done so he is in no position to complain. He had repeated notices of the delinquency, and there is nothing in the record to indicate that he evinced the slightest desire to pay what he owed until after the fire. The fact that he sent a check to the company a few days after the fire does not help his case. That payment was due October 1, 1937.

The appellant argues that, as the appellee did not consider the policy suspended, its only recourse was to cancel to avoid liability. He argues that this arose by virtue of the provisions of section 15. The only reference in that section to cancellation is the provision that all policies not canceled at the time of making assessment shall bear their portion of said assessment. This obviously has to do with designating what policies are liable to assessment. The right of cancellation permitted to both insured and insurer is set forth in Article V of the policy

and follows the provisions of section 9054, Code of 1939. The appellant argues that, the policy not having used the term "suspended," there was no other way of avoiding liability than by cancellation. In Hart v. Farmers Mut. F. & L. Ins. Assn., supra, the court used the following language: "After the expiration of the 30 days without payment, the certificate is ipso facto suspended." See, also, Early v. Bremer County Farmers Mut. F. Ins. Assn., supra.

In Federal Land Bank v. Farmers Mutual Ins. Assn., supra, [at page 1103 of 217 Iowa, page 55 of 253 N. W.] the court in speaking of the term "suspension" used the following language:

"Section 9 of the by-laws does not in express language contain a provision for the suspension of the insurance contract for the nonpayment of assessments. Perhaps, under proper facts and circumstances, the suspension of an insurance contract might be authorized therein without the use of the express word 'suspension'."

It should not be forgotten that the insurance policy was issued by a mutual company of which appellant was a member. The only method of paying losses experienced by its members was from assessments paid by the various members. Appellant admits that he did not pay, in the face of three separate notices sent to him asking that he pay. He ignored the warnings until after his loss. We hold that the court was right in finding in favor of the appellee, and the case is affirmed.—Affirmed.

MULRONEY, C. J., and HALE, MILLER, OLIVER, SMITH, WENNERSTRUM, and BLISS, JJ., concur.