H. A. Early, Appellant, v. Bremer County Farmers Mutual Fire Insurance Association, Appellee.

**INSURANCE:** Nonpayment of Premiums—"Suspension" and "Cancellation" of Policy Distinguished. The statutory provision that a policy of insurance issued by an assessment insurance association may be *canceled* by the association on a five-day notice to the insured (Sec. 9054, Code of 1924) has no application to a policy provision which *suspends* the membership of the policyholder and denies him right of recovery for loss while he is delinquent in the payment of assessments.

**TRIAL:** Conduct in General—Opening and Closing Argument—Burden of Issues. The opening and closing argument is properly accorded to a defendant who admits the allegations of the petition,· but avoids them by an affirmative defense.

Headnote 1: 26 C. J. p. 270 (Anno.); 32 C. J. p. 1304 (Anno.)  Headnote 2: 38 Cyc. p. 1304.

*Appeal from Fayette District Court.*—James D. Cooney, Judge.

February 9, 1926.

Action to recover on a farm mutual policy of insurance for the loss of a dwelling house by fire. Cause tried to a jury, resulting in a verdict for the defendant. From the judgment entered thereon, plaintiff appeals.—*Affirmed.*

*Bert B. Welty* and *Ainsworth & Antes,* for appellant.

*Sager & Sweet,* for appellee.

De Graff, C. J.—The defendant-appellee in its answer admitted the issuance of the policy, the loss, and all matters necessary to a recovery, except that it alleged that the policy was suspended at the time of the loss by reason of nonpayment of assessments duly levied by the company. If the interpretation of the law applicable to the instant policy is as claimed by appellee, then a fact question only is presented on this appeal.

1. INSURANCE: nonpayment of premiums: "suspension" and "cancellation" of policy distinguished.

I.    The policy stipulated:

"If any member fails to pay his assessment within the specified time according to Section twenty of the by-laws, he shall stand suspended and shall not be entitled to recover for any loss occurring while such delinquency exists and shall further be subject to 20% additional and costs."

Testimony was introduced by appellee to prove that notice of each assessment was mailed to appellant at his proper address. In fact, it is shown by appellee that nine separate and distinct notices were mailed by the secretary of the company to the appellant at Cambridge, Iowa, covering assessments for three years, to which no response of any kind was made. The appellant denied the receipt of notice of these assessments, and also denied that he in any way knew of the assessments levied by the appellee. It is further shown by the defendant company that each notice was mailed in an envelope having printed in its left-hand corner a return address, reading as follows:

"After five days return to Bremer County Farmers Mutual Fire Insurance Association, Otto Walthers, Sec'y. Route One, Waverly, Iowa."

None of these letters or notices were returned to appellee or its secretary.

The fire occurred March 28, 1923, and at that time the appellant had not paid the assessments levied against him, although his policy had been in existence for three years.

Section 1759-m of the 1913 Supplement to the Code (Section 9054, Code of 1924) authorizes the cancellation of a policy issued by any association operating under the provisions of Chapter 5, Title IX, of the Code, by giving a five days' written notice by the association of such cancellation to the insured. No such notice was served in this case, and it is the contention of appellee that this provision of the statute has application only to the cancellation of a policy, and not to the suspension thereof under the terms and provisions of the by-laws attached to and forming a part of the contract.

Prior to the enactment of Section 13, Chapter 80, Acts of the Thirty-second General Assembly (Section 1759-m, supra), there was no provision in this chapter for the cancellation of policies.    Section 11, Chapter 120, Laws of the Thirty-ninth

General Assembly, relating to mutual insurance associations, makes the by-laws, when printed on the policy, a part thereof, and binding upon the association and the insured alike.

It follows, therefore, that, unless the provision of Section 1759-m relating to the cancellation of policies is applicable to this case, the portion of the by-laws quoted above was binding upon this appellant.

"Suspension" and "cancellation" are not synonymous terms in the law of insurance. This is too obvious to require discussion.

The nonpayment of assessments duly levied and noticed to the insured operated automatically to suspend the policy, and during the period of suspension the association could not be made liable for an occurring loss.

The demurrer to the answer was properly overruled. The answer does not allege that plaintiff's policy was canceled, but does allege that plaintiff stood suspended during the default of payment of assessments. See *Beeman v. Farmers P. Mut. Ins. Assn.,* 104 Iowa 83; *Garlick v. Mississippi Valley Ins. Co.,* 44 Iowa 553.

II. The court instructed the jury that the sole question to be determined was:

"Did the plaintiff ever receive any of the notices of assessments claimed to have been sent to him by the defendant, prior to the fire?"

The court also gave the usual instruction as to the presumption arising from the posting of a properly stamped and addressed envelope. These instructions are challenged, but the criticism is purely verbal, and the exceptions taken must be overruled. Several instructions were requested by appellant and refused by the court, but no proper exceptions were preserved to the rulings of the court on this point. Section 11495, Code of 1924; *Anthony v. O'Brien,* 188 Iowa 802.

III. The court permitted the defendant to have the opening and closing arguments. This, we think, was proper. The answer admitted all the material allegations of the petition and

2. TRIAL: conduct in general: opening and closing argument: burden of issues.

pleaded an affirmative defense which the defendant was required to sustain by the preponderance of the evidence. In any event, there is nothing in the record to indicate that the appellant was in any way prejudiced by the court's ruling.

We find no error in the record, and the judgment of the trial court is—*Affirmed*.

STEVENS, FAVILLE, and VERMILION, JJ., concur.