Frances Whitesell BRAMMER, Roland E. Whitesell, Dennis Brammer and Art W. Brammer, Appellees,

v.

ALLIED MUTUAL INSURANCE COMPANY, Appellant,

Franklin County, State of Iowa, Intervenor-Appellee.

No. 54132.

Supreme Court of Iowa.

Dec. 15, 1970.

Larson & Carr, Charles City, and Archerd & Draheim, Clarion, for appellant.

Laird, Burington, Bovard & Heiny, Mason City, Lee B. Blum, County Atty., and Hobson, Cady & Drew, Hampton, for appellees.

BECKER, Justice.

Plaintiffs' petition for declaratory judgment seeks construction of a liability insurance policy between defendant Allied Mutual Insurance Company, as insurer, and Franklin County, Iowa, as insured. After action was commenced against the insurer, Franklin County intervened taking a position adverse to both parties. Over defendant-insurer's objections the matter was submitted to a jury which returned a verdict for plaintiffs. Defendant-insurer appeals. We affirm.

The motivation for this action is not determinative but should be noted in light of rule 265, Rules of Civil Procedure. This rule allows the court to refuse to render a declaratory judgment or decree where it would not terminate the uncertainty or controversy giving use to the proceedings. The insurance policy in question grants insured the right to determine whether governmental immunity shall be raised or waived as a defense to the action plaintiffs assert against insured county. Plaintiffs allege the county has refused to waive governmental immunity and will continue to do so unless it is adjudicated that the insurance policy in question affords coverage to it. Hence plaintiffs' and intervenor's need for a declaratory judgment. After the county intervened defendant conceded this type action is proper.

The accident in question occurred as an aftermath of a severe rainstorm in Franklin County on the afternoon and evening of June 8, 1967. The storm caused several washouts including a portion of the county road at the end of a bridge located near Hampton, Iowa. The washout was discovered the next day. A snow fence was immediately placed across part of the road at an intersection about eight-tenths of a mile south of the washout. A "road closed" and an oil-pot flare was also placed at this location. Like action was taken north of the washout. The fence was so constructed as to allow traffic to go around the end of the barricade and proceed down the road. Plaintiffs Dennis Brammer, as driver, and Frances Brammer, as passenger, were injured when their car struck the washout in question. The accident occurred June 12, 1967, three days after the barricade was erected. Except for erecting the barricade nothing more had been done because of other washouts in the county. The ultimate question of the liability of Franklin County is not now involved. The only question presented is whether the policy in question affords liability coverage to Franklin County under the foregoing facts.

The crucial endorsement in the policy reads: " 'In consideration of the premium charged, it is understood and agreed that Coverages B and D, Bodily Injury and Property Damage Liability—Except Automobile, of the policy to which this endorsement is attached do not apply to accidents caused by or arising out of any condition existing in the highways or roads, or bridges or culverts except accidents resulting while maintenance or repair operations are being performed by the Named Insured or Independent Contractors.' "

Both sides affirmatively plead the foregoing provision and claim it is conclusive in their favor as a matter of law. Plaintiffs claim to be within the exception to the exception; i. e. they were injured in an accident "caused by or arising out of a highway condition while maintenance or

repair operations were being performed". Defendants claim the accident arose out of a condition existing in the highway and no repair or maintenance had commenced on the highway at the time of the accident.

In contesting the jury verdict favorable to plaintiffs, defendant assigns the following errors:

1. A jury should not have been used in this declaratory judgment action because the gist of the action is equitable in nature and a jury would not otherwise be available to plaintiffs.

2. The matter of interpretation of the contract should have been taken from the jury and decided by the court in favor of defendant.

3. The burden of proof was erroneously placed on defendant.

4. An instruction defining defendant's burden as to who performed the repair work was erroneous.

■ I. The legal or equitable nature of a declaratory judgment procedure is to be determined by the pleadings, the relief sought and the nature of the case. If it is tried below without objection as at law or in equity, we treat it here as it was treated in the trial court. Bjork v. Dairyland Insurance Co., (Iowa 1970) 174 N.W.2d 379, 382. Ordinarily actions on contract are treated as actions at law unless specific equitable issues are involved. Ayres v. Nopoulos, (1927) 204 Iowa 881, 216 N.W. 258. We treat all actions that are not equitable in nature as ordinary actions. Section 611.3, et seq., Code, 1966. Here the issues tendered are basically legal in nature. Therefore the court properly preserved plaintiffs' right to a jury trial.

The right to a jury trial may neither be abridged nor extended by use of declaratory judgments as a remedy. Rule 268, R.C. P. The basis of plaintiffs' action as legal rather than equitable in nature is illustrated by cases cited in Division II, ante.

■ II. Defendant contends the case should have been taken from the jury and decided adversely to plaintiffs as a matter of law. Construction, i. e., the legal effect of a contract, is a matter of law to be decided by the court. Interpretation, i. e., the meaning to be given to the words, is a question of fact which may properly be submitted to the jury. Boyer v. Iowa High School Athletic Assn., (1967) 260 Iowa 1061, 152 N.W.2d 293, 298; 3 Corbin on Contracts, §§ 534, 554. If the evidence is so clear that a reasonable man could reach but one conclusion the question should be determined by the court as a matter of law. But if the evidence is disputed or if different conclusions may be drawn from the evidence, the question of interpretation is one of fact for the jury. General Casualty Co. v. Hines, (1968) 261 Iowa 783, 156 N.W.2d 118, 122, 123.

In Morris Plan Leasing Co. v. Bingham Feed & Grain Co., (1966) 259 Iowa 404, 143 N.W.2d 404, 412, we said:

"Ambiguity may be said to appear when, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one. Hubbard v. Marsh, 241 Iowa 163, 165, 40 N.W.2d 488, 490; Pedersen v. Bring, 254 Iowa 288, 294, 117 N.W.2d 509, 513. By 'interpretation of language' we determine what ideas that language induced in other persons. 3 Corbin on Contracts, § 534."

In Kubin v. Reineck, (1952) 93 Ohio App. 320, 113 N.E.2d 914, 917, the Court of Appeals of Ohio, Huron County, said:

" * * *, if there is no ambiguity of terms and no dispute as to the meaning of a written instrument, it is exclusively the duty of the court to construe such instrument and to determine the effect of its provisions as a matter of law. If, however, the terms of the instrument are ambiguous and indefinite and there is conflicting evidence as to the meaning thereof,

a question presents itself requiring submission. * * *." This may also be true where there is no conflicting extrinsic evidence as to the facts surrounding the making of the contract but there is conflicting evidence as to the facts to which the contract must be applied. Cf. Eckard v. World Insurance Co., 250 Iowa 782, 785, 786, 96 N.W.2d 454, (1959); Youngwirth v. State Farm Mut. Ins. Co., 258 Iowa 974, 140 N.W.2d 881, 884, 885, (1966); Meyer v. Fidelity and Casualty Co., 96 Iowa 378, 65 N.W. 328; Poweshiek County Bk. v. Nationwide Mut. Ins. Co., 261 Iowa 844, 156 N.W.2d 671 (1968).

Both sides offered evidence to aid in the interpretation of the words maintenance and repair as the meaning of the words applied to the factual situation that actually developed. Plaintiffs claim the words encompass a situation where the road was washed out, partially barricaded and waiting for actual work to start. They argue that the road was in the process of receiving maintenance and repair work as soon as the barricade, flare and sign were put in place. Defendant argues repair and maintenance refer to actual work in progress, or at least to something far more than is shown here.

Plaintiff produced the testimony of persons in the road repair and contracting business from which the jury could find barricading and posting is included in, and is a part of, road repair and maintenance work. Defendant countered with evidence from which the jury could conclude the barricade, flare and sign were merely to warn the public of danger until actual repair and maintenance work could begin; in this case, because of the extensive damage, about two weeks later.

The court instructed the jury on the meaning of the words repair and maintenance and left it to them to decide whether this fact situation fell within the meaning given.[1] Under our cases and the evidence presented to the court the decision to submit the question to the jury was proper.

III. The next complaint concerns the court's action placing the burden of proof on defendant. As stated, all of the operative facts in the case were admitted in the pleading or the subject of undisputed testimony with which defendant did not take issue. The controversy centered around the inferences to be drawn and the interpretation to be given to the insurance contract under the admitted facts in the case.

The court determined as a matter of law that there was a general liability policy which would afford protection to Franklin County unless; (1) the exclusion as to injuries arising out of any condition existing on highways applied; and (2) the exception as to maintenance and repairs did not apply. These were the only issues left.

Both parties had affirmatively pled the quoted exclusion and relied on it. Plaintiffs had proceeded to produce evidence in the normal way and the issue of who had the burden of proof was not raised until the close of all the evidence. It then announced the burden of proof would be placed on defendant in the instructions and defendant would have the right to open and close the final arguments.

While such action is unusual it is not unheard of in our Iowa practice and is correct under proper circumstances. The cases where the court has felt the placement of the burden of proof on defendant

1. "With respect to the second proposition, you are instructed that 'maintenance' means the preserving or keeping of something already in existence. Stated another way 'maintenance', means to hold or keep in a particular state or condition.

"'Repair,' means to renew, restore, or revive, and relates to the preservation of property to an originally existing condition, as near as may be, after decay, injury, dilapidation, or partial destruction.

"In this case if the defendant has proved that the accident did not result while maintenance or repair operations were being performed by Franklin County, then and in that event it has established its second proposition; otherwise not."

was proper are collected under rule 195, I. R.C.P. Annotated, dealing with oral arguments by the parties. Similar action was taken and approved in the following cases: Early v. Bremer County Farmers' Mut. Fire Ins. Assn., (1926) 201 Iowa 263, 207 N.W. 117; General Motors Acceptance Corp. v. Whiteley (1934) 217 Iowa 998, 252 N.W. 779; In Re Estate of Cocklin (1942) 232 Iowa 266, 5 N.W.2d 577.

In the first instance the question of where the burden of proof lies is to be determined by the court from the pleadings. 88 C.J.S. Trial § 207, page 407. This is necessary to determine the order of proof.

But the question of where the ultimate burden of proof rests for purpose of instructing the jury must be resolved at the time the instructions are given. At such time the decision depends not only on the pleadings but the state of the evidence as well. 88 C.J.S. Trial § 269, page 729. This is illustrated by the three above quoted cases. Cf. Adamson v. Harper (1913) 162 Iowa 56, 61, 143 N.W. 844; In re Estate of Wilson (1909) 142 Iowa 521, 526, 119 N.W. 604.

Faced with the elimination of all issues but the one mentioned, the court was also cognizant of the following rules:

"Ordinarily the burden of proof follows the pleadings; that is, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it." Rule 344(f) (5), R.C.P. The burden of proof remains the same in a declaratory judgment. General Casualty Co. v. Hines (1968) 261 Iowa 738, 742, 156 N.W.2d 118. The burden of pleading and proving an exclusion or exception in a policy of insurance is placed on the insurer. Carpenter v. Iowa State Trav. Men's Assn., (1932) 213 Iowa 1001, 240 N.W. 639; Wilson v. State Farm Mut. Auto Ins. Co. (1964) 256 Iowa 844, 846, 128 N.W.2d 218.

The exclusion in the policy is itself subject to an exception. The result is an inclusion within an exclusion. 19 Couch, Insurance, § 79.384, at page 673 (2nd ed. 1968) deals with the narrow issue of the burden of proof in these cases:

"In many instances, a policy exception is itself subject to exceptions or limitations. When this is the case, the insurer in proving that the loss comes within the exception must also proceed further to show that the exception or limitation to the exception does not preclude the application of the exception. Consequently, if an exception of liability for injuries intentionally inflicted does not extend to all injuries so inflicted, as for instance, where the exception reads: 'Except where inflicted during a robbery,' etc., the defendant does not sustain its burden of proof unless it negatives the exception in the exemption.

"There is, however, authority that when a policy contains an exception within an exception, the insurer need not negative the internal exception; rather, the plaintiff must show that the exception from the exemption from liability applies."

Iowa adopted the view that the insurer has the burden of proof regarding an exception to an exception in the only case found on this narrow issue. Olson v. Southern Surety Co., (1926) 201 Iowa 1334, 208 N.W. 213. The insurance policy in the case excepted injuries resulting from the intentional acts of any person except assaults by one committing a robbery. As to this exception we held the burden remained on the insurance carrier.

In placing the burden of proof on this issue on defendant no error occurred. Since it was the only issue left the court acted properly in instructing as it did and in allowing defendant to open and close.

IV. Defendant's last complaint goes to the addition of the words "or for" to the element of proof outlined in Instruction No. 5. The paragraph as given read:

"That said accident did not result while maintenance or repair operations were

being performed by or for Franklin County, Iowa."

The addition of the words "or for" conformed the instruction to the rider in the insurance policy which was in evidence. There was no dispute on the proposition that the county actually did the repair work itself and no evidence that any other person or firm did any work on this project. The jury could not have been misled. The assignment is without merit.

Affirmed.

MOORE, C. J., and LARSON, RAWLINGS, LeGRAND and REES, JJ., concur.

STUART and MASON, JJ., concur specially.

UHLENHOPP, J., takes no part.

STUART, Justice (concurring specially).

In this case defendant issued a liability insurance policy to Franklin County which excluded "accidents caused by or arising out of any condition existing in the highways or roads, or bridges or culverts except accidents resulting while maintenance or repair operations are being performed * * *".

The trial court instructed the jury defendant had established the accident was caused by a condition in the highway. The only question remaining was whether "repair and maintenance operations were being performed". If so, coverage would be afforded under this exception to the exclusion. The trial court gave the jury dictionary definitions of "repair" and "maintenance" and submitted the question to the jury which returned a verdict for plaintiff. The majority opinion holds the question was correctly submitted to the jury.

I cannot agree. In my opinion the trial court should have interpreted the language of the contract in the light of the undisputed facts and submitted to the jury only the question about which there was conflicting evidence. I concur specially rather than dissent because I believe the error was harmless under the jury's verdict.

I agree with the distinction drawn by legal writers between construction of a contract and the interpretation of the words it contains. However, the courts, including ours, have not in all instances been consistent in recognizing this distinction. 17 Am.Jur.2d 624, Contracts, § 240.

It seems generally agreed that construction of a contract is for the court. There is a great deal of confusion, however, as to whether interpretation is a question of law or fact and if it is a fact question whether it is for the court or jury.

Corbin says: "If the words of agreement, whether oral or written, are definite and undisputed, and if there is no doubt as to the relevant surrounding circumstances, the interpretation of the words is ordinarily held to be a matter for the court. Even if these circumstances are in dispute, the evidence as to what they were may be so clear and convincing that the court would set aside a verdict contrary to that evidence. The result of these rules is that in very many cases where the contract is in writing the interpretation of its language has been held to be for the court and not for the jury." Corbin on Contracts, chapter 24, § 554, pp. 223–225.

Edwin W. Patterson states the applicable rule as follows:

"Even in a case in which a jury is the trier of issues of fact, the interpretation and construction of a written contract is within the exclusive province of the judge. While the judge may be called upon, in this process, to determine several issues of 'fact' such as those inferences referred to above, the relevant dictionaries, and relevant circumstances, yet the meaning of a written instrument is often called 'a question of law'. This characterization of the rule is a surviving fiction (or semifiction). The continuation of the rule is justified by the judge's superior equipment—his educa-

tion and legal experience—to interpret written instruments and to give them reliability. As a determination of law, the trial judge's interpretation of the meaning of a written contract is not as conclusive upon an appellate court as his 'findings of fact' would be and hence may be set aside as an 'error of law'." The Interpretation And Construction of Contracts, 64 Columbia Law Review 833, 836–837 (1964).

Corbin treats the issue as one of fact while Patterson treats it as one of law. It might be considered a difference in semantics if it were not for the effect on appellate review and the posture of the trial court's decision on appeal.

I have difficulty identifying the issue as one of fact when the evidence is undisputed and not subject to different inferences. Definitions found in the cases or dictionaries are authorities supporting a legal conclusion, not evidence raising a fact question. But even if it were treated as a fact question, all sources of possible definitions should be available to the finder of fact. These indispensible tools are not available to juries.

I agree that if extrinsic evidence is offered which is disputed or from which different inferences may be drawn, the interpretation of the words of a contract should be submitted to the jury. But, in the absence of extrinsic evidence or if the extrinsic evidence is such that it is subject to only one conclusion, the issue is one for the court, whether it be considered one of fact or law. The following authorities lend support to this position.

General Casualty Co. v. Hines (1968), 261 Iowa 738, 745, 156 N.W.2d 118, 122–123; Fetters v. City of Des Moines (1967), 260 Iowa 490, 494, 149 N.W.2d 815, 818; Boyer v. Iowa High School Athletic Assn. (1967), 260 Iowa 1061, 1069, 152 N.W.2d 293, 298; Morris Plan Co. v. Bingham Feed and Grain Co. (1966), 259 Iowa 404, 415–416, 143 N.W.2d 404, 412; Rice v. Sioux City Memorial Park Cemetery (1953), 245 Iowa 147, 160, 60 N.W.2d 110, 118; Rapp v. Linebarger (1910), 149 Iowa 429, 438, 128 N.W. 55; Flores v. Barman (1955), 130 Cal.App.2d 282, 279 P.2d 81, 84; Quader-Kino A. G. v. Nebenzal (Cal. 1950), 35 Cal.2d 287, 217 P.2d 650, 659; West v. Brenner (1964), 88 Idaho 44, 396 P.2d 115, 118; Cut Price Super Markets v. Kingpin Food, Inc. (Minn.1959), 256 Minn. 339, 98 N.W.2d 257, 267–268; Bauman v. Midland Union Ins. Co. (1952), 261 Wis. 449, 53 N.W.2d 529, 530; 44 Am.Jur.2d 1007–1008, Insurance, § 2064; 46 C.J.S. Insurance § 1368, pp. 599–600; 88 C.J.S. Trial § 217, pp. 499–500; Anno. 65 A.L.R. 648, 650–651.

When we apply these principles to this case we find no extrinsic evidence offered relating to the intended meaning of "except accidents resulting while maintenance and repair operations are being performed" in the policy. No circumstances surrounding its execution are shown. The only extrinsic evidence related to the purpose of barricades generally and this one in particular. There was evidence barricades, signs and lights are to warn the public of the danger, to protect the workmen and equipment and to prevent interference with the progress of the work. There was also evidence the barricades, signs and lights were installed the day after the approach to the bridge washed out and that the accident happened three days later. No equipment was moved to the job and no filling operation commenced until about two weeks after the accident.

If we interpret the provision most favorably to the insured, General Casualty Co. v. Hines (1968), 261 Iowa 738, 744, 156 N.W.2d 118, 122, we should hold that repair and maintenance operations are being performed from the time the first acts necessary to repair and maintenance are done and so instruct the jury. This instruction would still leave for the jury the determination of the factual question as to whether this particular barricade was installed as a first step in repairs and maintenance or whether it was just to warn and protect

the public since further work was not performed until over two weeks later.

In Youngwirth v. State Farm Auto Ins. Co. (1966), 258 Iowa 974, 981, 140 N.W.2d 881, 885, we held the interpretation of the exclusionary clause of the insurance policy was for the court as a matter of law, but held a jury question existed as to whether he was in fact in the course of his employment. The result was similar to the one I am urging here.

I would concur in the result and hold that the submission of the broader question to the jury was harmless error in view of the verdict.

MASON, J., joins in this special concurrence.